IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FIBRE CORPORATION, TRIMEN WOOD
PRODUCTS, LLC, DONALD COX, &
ORVAL GRAY                                         PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 5:04cv170-DCB-JCS

GSO AMERICA, INC., GSO HOLDING,
LLC, GSO MISSISSIPPI, LLC, LaTex
ORGANIC, LLC, & HOPE AGRI
PRODUCTS, INC.                                     DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the defendants' Motion for Partial Summary Judgment [**docket entry no. 61**], the plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 65**], and the defendants' Motion to Dismiss the Plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 67**]. Having reviewed the Motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

**GENERAL FACTUAL AND PROCEDURAL HISTORY**

On November 4, 2002, the plaintiffs entered into an Asset Purchase Agreement to purchase a mulch processing plant located in Natchez, Mississippi, and owned by defendant GSO America ("GSO"). <u>See</u> Asset Purchase Agreement (attached as Ex. D to Def. Motion for Partial Summ. Judgment). The purchase price of the facility under the contract was $680,000.00, with closing to take place on December 19, 2002. Due to problems in obtaining financing for the

deal, the closing did not take place on December 19; however, discussions between the parties concerning the purchase of the plant continued.  The dispute in this case arises primarily out of the legal effect of those continued discussions.  The plaintiffs contend that an enforceable contract persisted after the closing date passed, while the defendants argue that all contractual rights and obligations between the parties ended after closing was not completed on the date specified in the written contract.

On August 19, 2003, GSO informed the plaintiffs that it had sold the facility to another buyer.  See Letter dated August 19, 2003 (attached as Ex. G to Pl. Motion for Summ. Judgment).  The buyer of the mulch processing plant was LaTex Organic ("LaTex"), one of GSO's co-defendants in this action.  The plaintiffs feel aggrieved by GSO's decision to sell the plant to LaTex, as they believe that an enforceable contract for the purchase of the plant still existed after the December 19 closing date passed.  Moreover, the plaintiffs also believe that LaTex and its related co-defendants tortiously interfered with the plaintiffs' contractual relation with GSO.

The plaintiffs filed a complaint in the Circuit Court of Adams County, Mississippi, on May 19, 2004, alleging a number of counts against the defendants: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) breach of fiduciary duty; (4) tortious interference with contract; (5) tortious interference with

-2-

prospective business relationship or contract; (6) civil conspiracy; (7) negligent misrepresentation; (8) promissory estoppel; and (9) trespass.[1]  The case was removed to this Court on June 23, 2004.[2]

On June 14, 2005, the defendants filed a Motion for Partial Summary Judgment [docket entry no. 61], alleging that they are entitled to judgment as a matter of law on the plaintiffs' trespass, breach of contract, tortious interference with a contract, and civil conspiracy claims.  The plaintiffs countered with a response and their own Motion for Partial Summary Judgment [docket entry nos. 63 & 65] on July 1, 2005.[3]  On July 6, 2005, the defendants moved the Court to dismiss the plaintiffs' Motion for Partial Summary Judgment on the grounds that it was untimely filed.

---

[1]  The Court will provide a more comprehensive factual background as it separately discusses the breach of contract claim and the trespass claim, <u>infra</u>.

[2]  The plaintiffs moved for remand on July 21, 2004, and initially alleged that complete diversity did not exist between the parties.  That motion to remand was, however, withdrawn on September 20, 2004, as the plaintiffs have conceded that complete diversity exists.

[3]  The plaintiffs' response to the defendants' Motion for Partial Summary Judgment is captioned as a "Response" and docketed as entry number 63.  That response also included a cross-motion for summary judgment.  As an administrative matter, that same document is also docketed under entry number 65 as an independent Motion for Partial Summary Judgment by the plaintiffs.

**DISCUSSION**

## I.  Jurisdiction

Federal courts are courts of limited jurisdiction.  Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over cases where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"  The amount in controversy in this case satisfies the requisite statutory amount inasmuch as it is clear from the face of the pleadings that more than $75,000 is at stake.  See Compl., ¶¶14, 28, 34, 47 (alleging, in the context of a breached contract for the sale of a plant for $680,000.00, damages of lost profits, reliance damages, loss of access to property, and a claim for punitive damages); Notice of Removal, ¶2 (declaring that the amount in controversy exceeds the required jurisdictional amount); Motion to Remand (arguing that diversity jurisdiction is inappropriate only on the basis of lack of complete diversity, not due to an insufficient amount in controversy).

It is also clear that the parties in this action are diverse.  The plaintiffs aver that "[f]or purposes of diversity jurisdiction, plaintiffs are citizens of Georgia and Louisiana."  Motion to Remand, ¶3.  The defendants are GSO Amercia, Inc., an Ohio corporation with its principal place of business in Ohio; GSO Holding, LLC and GSO Mississippi, LLC, both of whose sole member is

-4-

GSO America, Inc.; LaTex Organic, LLC, whose members include only Cooper/T Smith Corporation, an Alabama corporation with its principal place of business in Alabama, and Hope Agri Products, Inc., an Arkansas corporation with its principal place of business in Arkansas.  Because citizenship of a limited liability company is determined by the citizenship of its members, complete diversity does exist between the parties in this action.  See Cosgrove v. Bartolotta, 150 F.3d 729 (7th Cir. 1998).  Therefore, this Court has subject matter jurisdiction and will now proceed to discuss the merits of the parties' motions.

## II.  Summary Judgment Standard

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is

sufficient for a reasonable jury to return a verdict for the non-moving party." Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in

-6-

favor of the party opposing summary judgment.  <u>Anderson</u>, 477 U.S. at 255.  The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence."  <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).  By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party.  <u>Matshushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III.  Trespass

During their due diligence following the execution of the November 4, 2002, Asset Purchase Agreement, the plaintiffs discovered that the subject "plant was being regularly accessed from the northeast side of its boundary . . . by traverse across a strip of land . . . ."  Pl. Motion for Summ. Judgment, ¶4.  The plaintiffs believe that the strip of land that was being crossed to gain entry into the plant was owned, at the time, by Illinois Central Railroad Company ("ICRC").  In order to avoid what they perceived would be a trespass on ICRC's land once the purchase of the plant was finalized, the plaintiffs began to negotiate with the railroad in December 2002 to purchase the strip of land adjoining

the entrance to the plant.  Id.  Although the plaintiffs were later informed by GSO that the mulch processing plant had been sold to another buyer, the plaintiffs continued their negotiations with the railroad and purchased the adjoining tract of land by quitclaim dated September of 2003.  See Quitclaim Deed dated September 8, 2003 (attached as Ex. A-1 to Pl. Motion for Summ. Judgment).

After the plaintiffs received the quitclaim deed from the railroad, demand was made upon LaTex, which was then operating the mulch processing plant and whose workers were crossing the tract of land to gain entry to the facility, to cease its trespass on that property.  See Letter dated September 24, 2004 (attached as Ex. B. to Pl. Motion for Summ. Judgment).  In addition to their assertion that LaTex's workers were continually trespassing on said tract, the plaintiffs maintain that LaTex also prohibited the plaintiffs' access to the tract by erecting a locked gate, and that LaTex "was traversing the length of the land with heavy vehicles (rather than merely crossing it . . .), was utilizing the land for storage of material, and [had] actually graded and altered the land . . . ." Pl. Motion for Summ. Judgment, ¶6.

LaTex did not comply with the demand letter sent by the plaintiffs and its workers continue to regularly traverse the tract in question.  However, the defendants contend that ICRC, and therefore the plaintiffs as well, never enjoyed the right to exclude others from the tract of land and that the railroad had

-8-

only a "right of way" to establish a rail-line through the tract.
See Def. Memo. in Support of Motion for Summ. Judgment, at 3.
Moreover, the defendants claim that even if the plaintiffs did
receive the tract in fee simple from ICRC, no trespass is occurring
because the defendants own a roadway easement over the tract.

The Court will first analyze the land records to determine
what rights ICRC owned in the tract before it transferred those
rights to the plaintiffs via quitclaim deed.  Then, if necessary,
the Court will continue its analysis to determine whether or not
the defendants have an easement to cross the tract.[4]

What rights did ICRC have in the tract of land?

On January 11, 1872, George and Charlotte Marshall executed a
deed to the Natchez & Jackson Railroad Company.[5]  The deed is
handwritten and difficult to interpret, but the parties have
generally agreed that it reads as follows:

> George M. Marshall & Wife to N.J.&C RR Co. Deed
>     This Indenture Witnesseth that whereas the Natchez

---

[4] The defendants need to prove that they had an easement to
cross the tract of land only if it is first shown that ICRC owned
the tract in fee and had the right to exclude others.  If ICRC
never held such a right, then the plaintiffs would also be unable
to bring such an action since they could only enjoy by quitclaim
deed whatever rights the railroad had in the land.  See Rosenbaum
v. McCaskey, 386 So. 2d 387, 389 (Miss. 1980) (stating that the
chain of title prior to a quitclaim deed must be examined to
determine what rights passed to the grantee).

[5] The Natchez & Jackson Railroad Company is the predecessor in
interest to ICRC.

-9-

and Jackson Railroad Company by preliminary surveys has proposed for the location of its road a route running across a tract of land of George M. Marshall and Charlotte H. Marshall situated in the County of Adams bounded as follows: North by the lands heretofore known as the "Wilderness" tract and owned by Samuel Guestice and recently by Lloyd Waites, East by St. Catherine's Creek, South by Lands of Ms. Rebecca _____ and West by lands of Thomas J. Giles on the west of the Pine Ridge Road lying in said last mentioned road about four miles from the City of Natchez.  Now in consideration of the increase in value and other benefits that will accrue to and be secured for said lands and the said Grantors by the construction of said road upon said lands and of one dollar to him in hand paid by said company, *the said Grantors do hereby give, grant, assign and convey unto N&J RR Co. the right to enter upon and hold any lands or premises of the above described tract of land that may be necessary and proper for the construction and working of the road of said company*, to include a width of fifty feet on each side up the road and such further width as may be necessary for the excavations and embankments of its road; and also such lands and premises of said tract as may be necessary for turn-outs, side tracks, standing places for cars, depots, station houses, work and machine shops and other structures that may be required for the working and security of the road, with such title and possession to and of the said lands and premises as would or might be acquired by an entry upon and appropriation of the _____ and the payment of appraised damages therefore by the said Company under the provisions of the Second Section of the act of incorporation of said company entitled "the act to incorporate the Natchez and Jackson Railroad Company" approved July 21, 1870.  *The said lands and premises hereby conveyed to be had and held, used and enjoyed, by the said Company and its assigns for the purposes aforesaid against the said Grantors and their heirs and assigns forever.*  And in consideration of the premises aforesaid and the further consideration of one dollar to her in hand paid by the N&J RR Co., Charlotte Marshall, wife of said Grantor, doth by these presents grant, bargain, sell, release, and forever QC to the said N&J RR Co. and its assigns forever all of her right of dower and other rights, claims and demands in, to, of and upon said granted premises.

Deed dated January 10, 1872 (attached as Ex. C to Pl. Motion for

Partial Summ. Judgment) (emphasis added for later discussion). The deed was recorded, according to the plaintiffs, on or about May 16, 1872. Pl. Memo. in Support of Motion for Summ. Judgment, at 2.

The plaintiffs contend that the language contained in the 1872 deed transferred the tract of land in fee simple to the railroad. See Pl. Rebuttal Brief, at 1. The defendants, however, contend that the 1872 deed granted nothing more to the railroad than the right to build and operate a working rail line on the tract. See Def. Rebuttal Brief in Support of Motion for Partial Summ. Judgment, at 1. Though the exact granting language of the deed involved in this case has not been addressed by a Mississippi court, a review of some of the state's case law will be beneficial in this Court's interpretation of the deed.

_Mississippi case law interpreting whether railroad received right of way easement or fee from conveyance_:

In Dossett v. New Orleans Great Northern Railroad Co., 295 So. 2d 771 (Miss. 1974), the plaintiffs brought an action to clear a cloud on their title that stemmed from the railroad defendant's claim to fee simple ownership an a strip of land. Id. at 771. The railroad's interest in the land arose from a 1907 deed that conveyed to the defendant "a strip of land for a right of way." Id. at 775. The parties disputed the legal effect of the conveyance, with the plaintiffs claiming the deed conveyed only an easement to the railroad, and the railroad claiming that it had received a fee simple interest in the tract. Id. at 772. The

-11-

Mississippi Supreme Court first listed some "legal rules of construction" to guide its analysis in the case:

> (1) [T]he deed must be read in the light of the circumstances surrounding the parties when it was executed; (2) that the construction should be upon the entire instrument, and each word and clause therein should be reconciled and given a meaning, if that can be reasonably done; (3) that the main document and that to which it refers must be construed together; (4) that if the wording of the deed is ambiguous, the practical construction placed thereon by the parties will have much weight in determining the meaning; and (5) that in case the deed is ambiguous, and subject to two possible constructions, one more favorable to the grantee, and the other more favorable to the grantor, that construction favorable to the grantee will be adopted.

Id. (quoting Richardson v. Moore, 22 So. 2d 494, 495 (Miss. 1945). See also B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 487 (Miss. 2005) (stating that the court must accept "the plain meaning of a contract as the intent of the parties if no ambiguity exists"); Beazley v. Beazley, --- So. 2d ----, 2005 WL 2431183, at *4 (Miss. Ct. App. 2005) (stating that ambiguities in a contract should be resolved against the drafter of the instrument).[6]

The Dossett court also noted that, when dealing with conveyances to railroads, some specific rules of construction may also apply:

---

[6] "It is well established that the same rules of construction apply to the construction of easement grants as apply to contracts." Tubb. v. Monroe County Elec. Power Ass'n, --- So. 2d ----, 2005 WL 2431667, at *4 (Miss. Ct. App. 2005) (citing Sigals v. Mfrs. Light & Heat Co., 299 A.2d 646, 649 (Pa. 1973)).

> The estate or interest acquired by a railroad
> in land conveyed to it for a right of way is
> generally construed to be an easement, but a
> railroad may, unless prohibited by statute,
> acquire the fee in the right of way where the
> deed of conveyance is sufficient for that
> purpose and the statute permits a railroad to
> acquire a fee in its right of way. . . .  It
> has been held that where a deed contained
> additional language referring in some way to a
> "right of way", it operated to convey a mere
> easement rather than a title in fee. . . .  In
> instances, however, involving the construction
> of deeds granting "land" rather than a
> "right", the result has been reached that the
> fact that the deed contained additional
> language embodying some reference to a "right
> of way" did not operate to limit the estate
> conveyed or to cut it down from a title in fee
> to an easement.

Dossett, 295 So. 2d at 773 (quoting 65 Am. Jur. 2d Railroads § 75,

at 387-89).  The Dossett court went on to identify the parties'

subsequent treatment of the tract of land, including whether the

land was mentioned in later deeds and who paid property taxes on

the land, as an important factor in determining the extent of

rights conveyed in a deed.  Id. at 774.

Moving to the facts of the case, the Dossett court concluded

that the 1907 deed to the railroad had conveyed a fee simple

interest.   In considering the aforementioned principles of

construction, the court noted that the instrument conveyed a "strip

of land" to the railroad and not just a right of way, that the

railroad had paid all taxes on the property since the conveyance,

and that both parties' subsequent conveyances of land treated the

tract as belonging to the railroad.  Id. at 775.  Thus, while there

-13-

is a general presumption that a conveyance to a railroad to operate a rail line normally conveys only an easement, the court found sufficient evidence of the contracting parties' intent to conclude that the defendant had received a fee simple interest in the tract.

In <u>Williams v. Patterson</u>, 21 So. 2d 477 (Miss. 1945), the plaintiff contended that the railroad, from which he had received a quitclaim deed to the property in question, had previously been granted a fee simple right via a deed which read, in part, as follows:

> To <u>have and to hold</u> by the said party of the second part and assigns forever for the purposes hereinafter specified and for none other.  That is to say for the purpose of building, constructing and operating a line of railroad on the right of way, and the said party of the second party shall have the right [to do such things] as are necessary and convenient in constructing and operating its line of railroad thereon.

<u>Id.</u> at 478-79 (emphasis added).  Under the language of this deed, the Mississippi court concluded that "the grantee went into possession of a right of way for railroad purposes only."  <u>Id.</u> at 479.

In <u>New Orleans & Northeaster Railroad v. Morrison</u>, 35 So. 2d 68 (Miss. 1948) (en banc), the Mississippi Supreme Court again addressed an argument that the railroad had received a fee simple rather than an easement under the language of the deed.  In that case, the grantor, in return for $1 in consideration, conveyed a "right of way for 200 feet" through a prescribed area of land owned

by the grantor. As the 1872 deed at issue in the present case failed to do, the <u>Morrison</u> deed did not specify exactly where the rail line was to be laid.[7] <u>Id.</u> at 801. Interpreting this language, the court concluded that the railroad had received only an easement. Special note was taken that the deed had utilized the words "right of way" in the conveyance, indicating that a right of way instead of a fee was transferred. <u>Id.</u> at 803. Moreover, the court was concerned that the deed had failed to identify with certainty the strip of land the railroad purported to own in fee. Under such a scenario, the court concluded that the railroad only acquired "a floating easement or right of user of a strip 200 feet wide through" the boundaries prescribed in the deed. <u>Id.</u>

Most damning to the railroad's claims was the recognized principle that "where an easement will satisfy the purpose of the grant[,] a fee will not be included in the grant unless expressly provided." <u>Id.</u> at 803–04 (citing <u>Whitworth v. Miss. State Hwy. Comm'n</u>, 33 So. 2d 612 (1948)). Because the railroad's purposes in operating a rail line had been adequately served via an easement, the court was reluctant to find a fee had been transferred. The court was also not persuaded by the railroad's argument that because it had paid the assessed taxes on the strip in question

---

[7] Instead, the 1872 deed describes the boundaries of the entire parcel of land owned by the grantors and allows the railroad to decide the route necessary to run its rail line through that parcel.

since the execution of the deed, it should be considered to have a fee simple: "No implication of a fee can arise where, by the terms of the deed, there are conveyed rights adequate to the grantee's special purpose which is consistent with the owner's retention of the fee." Id. at 804.

Four years later, the Supreme Court of Mississippi interpreted a state statute and held that, where a deed is ambiguous, a fee simple conveyance should be presumed. See Miss. Cent. R. Co. v. Ratcliff, 59 So. 2d 311 (Miss. 1952). In Ratcliff, the court held that the railroad had received fee simple from the original land owner because there was no language in the deed limiting the conveyance to an easement. 59 So. 2d at 313. The court relied upon a state statute which created a presumption that all conveyances were in fee-simple unless there was a clear indication that a lesser estate was intended. Id. at 314 (citing Miss. Code of 1906 § 2764).[8]   The Ratcliff court also discounted the

---

[8] Since at least 1836, Mississippi has had a statutory presumption that a fee simple passes if the conveyance is ambiguous. See Alabama & Vicksburg Railway Co. v. Mashburn, 109 So. 2d 533, 535 (Miss. 1959) (noting that the Revised Statutes of Mississippi of 1836 contain a provision presuming that a fee simple title passes unless expressly limited). The current codification of this presumption, Mississippi Code as § 89-1-5, states as follows:

> Every estate in lands granted, conveyed, or devised, although the words deemed necessary by the common law to transfer an estate of inheritance be not added, shall be deemed a fee-simple if a less estate be not limited by express words, or unless it clearly appears

significance of the deed's acknowledgment of the purpose of the conveyance, to operate a rail line, as evidence that only a right of way was conferred.  <u>Id.</u> at 315.  The court explained that where a recital following the granting clause carries a repugnant meaning, the granting clause prevails.  <u>Id.</u>  <u>See also</u> <u>Jones v. New Orleans & Northeastern R. Co.</u>, 59 So. 2d 541, 543 (Miss. 1952) (interpreting the reference after the granting clause, "for depot, siding, switches and other railroad purposes," as an expression of purpose of the deed, but not as a limit on the granting clause).  Furthermore, the fact that the defendant railroad had used the land only for a right of way did not mean that a fee simple estate had not been conveyed to it.  <u>Ratcliff</u>, 59 So. 2d at 315 (citing <u>Kynerd v. Hulen</u>, 5 F.2d 160, 161 (5th Cir. 1925) ("If a fee-simple estate be acquired, it is immaterial that the land so held in extent and area constitutes the right or way or that it is so used.")).

*Application of Mississippi case law principles to the present case:*

Unlike the <u>Dossett</u> deed which conveyed "a strip of land for a right of way," the instrument in this case makes no explicit mention of a "strip of land" or a "right of way."  However, the 1872 deed does grant the "<u>right to enter upon and hold</u> any lands . . . that may be necessary and proper for the construction and

from the conveyance or will that a less estate
was intended to pass thereby.

working of" a rail line.  See Deed dated 1872 (emphasis added).
Such language, giving a right to enter upon and hold the property,
but not conveying the land itself, indicates that ICRC had only a
right of way.  See, e.g., Penn. Co. for Ins. on Lives & Granting
Annuities v. Cincinnati & L.E.R. Co., 43 F. Supp. 5, 9 (S.D. Ohio
1942) (interpreting court order giving the "right to enter upon and
hold the property" to the railroad as transferring a right of way);
Mathews v. Lake Shore & M.S.R. Co., 67 N.W. 1111 (Mich. 1896)
(assuming that a deed granting the railroad the right to enter upon
and operate a rail line conveyed an easement rather than a fee);
see also A.E. Korpela, Deed to Railroad as Conveying Fee or
Easement, 6 A.L.R.3d 973 § 3 (noting that the transfer of a "right"
in a conveyance indicates an easement has been conveyed rather than
a fee).

Subsequent language in the 1872 deed states: "The said lands
and premises hereby conveyed to be had and held, used and enjoyed,
by the said Company and its assigns for the purposes aforesaid
against the said Grantors and their heirs and assigns forever."
Deed dated 1872 (emphasis added).  Such language of conveyance
could, if contained with the granting clause, indicate a transfer
of a fee interest as opposed to an easement.  See Alabama &
Vicksburg Rwy. Co. v. C.J. Mashburn, 109 So. 2d 533, 535 (Miss.
1959) (interpreting deed that released, relinquished, granted,
bargained, sold and conveyed the property as transferring a fee

simple to the railroad).  The problem for the plaintiffs, however, is that this successive language is not contained in the <u>granting clause</u> of the 1872 deed.  Under <u>Jones</u> and <u>Ratcliff</u>, where a subsequent clause is at odds with the granting clause, the granting clause prevails.  Therefore, it is this Court's conclusion that under the clear language of the 1872 deed, ICRC received only a right of way within the subject property and that Fibre Corporation received the same through its quitclaim deed.

<u>If</u> the granting language in the deed was ambiguous, the plaintiffs would have a stronger argument that fee simple title was conveyed under the applicable rules of construction inasmuch as there are some factors favoring their contention.  One such factor is that ICRC had continually paid the property taxes on the land, and Fibre Corporation has paid them since receiving the quitclaim deed from ICRC in 2003.  <u>See</u> Pl. Rebuttal Brief in Support of Pl. Motion for Partial Summ. Judgment, at 5.  Additionally, under <u>Dossett</u> and Mississippi statutory law, ambiguities are to be resolved in favor of the grantee, in this case the railroad.

However, the language in the deed is not ambiguous.  It is clear that the grantors intended to convey and did convey unto N&J RR Company the right to enter upon and hold lands necessary for the construction and use of a railroad.  Had it been the intent of the parties to pass fee simple title, the grantee would have received all rights and, thus, it would have been both unnecessary and

redundant to outline the right or rights which were intended to pass from the grantors to the grantee. Further evidence of the intent of the parties to convey and receive a right of way is the following language: The said lands and premises hereby conveyed to be had and held, used and enjoyed by the said Company and its assigns for the purposes aforesaid against the said Grantors and their heirs and assigns forever. Again, if the parties intended an outright fee simple conveyance, this language would be unnecessary surplusage. The Court recognizes, of course, that in many instances a language overload has no effect on the intent of the parties or the consequence of a document, and the Court also recognizes that, as stated supra, ambiguities should be resolved in favor of the grantee. However, in this case, the Court finds no ambiguity. It is apparent that George M. Marshall, *et ux.*, grantors, and N&J RR Company, grantee, intended a right of way conveyance for the construction and use of a railroad. The language "to be had and held, used and enjoyed, by the said Company and its assigns for the purposes aforesaid against the said Grantors and their heirs and assigns forever" was intended to create and it did create a dominant right in favor of the railroad to have, hold and enjoy this easement for the purposes clearly stated in the document.

Moreover, as was true in Morrison and as stated above, the Marshall deed does not describe by courses and distances or by any

other means a specific tract of land.  By metes and bounds the deed describes the lands of George M. Marshall and Charlotte H. Marshall situated in the County of Adams, and the deed goes on to state that the conveyance is for railroad purposes and is to include a width of fifty feet on each side of the road and such other lands as may be necessary for "turn-outs, sidetracks", etc.  Although a fee simple conveyance by such broad and indefinite language is, perhaps, not prohibitable, it would be unreasonable for this Court to conclude that the Grantors and Grantee intended anything other than what the <u>Morrison</u> court described as a "floating easement" or right of use over, on and through a much larger tract of land which is generally described by metes and bounds.[9]

Therefore, the 1872 deed transferred only a right of way and the arguments presented by Fibre Corporation in their pleadings and

---

[9] Even if the 1872 deed were considered ambiguous, strong arguments could be made that such ambiguities should be resolved in favor of the defendants in this case.  As just discussed, <u>Morrison</u> stands for the proposition that the failure of a deed to specifically identify a tract of land to be used for the railway indicates a transfer of an easement only.  Additionally, both <u>Dossett</u> and <u>Morrison</u> state that conveyances to railroads, in general, are to interpreted as easements as opposed to in fee simple.  This presumption of an easement is only strengthened when the consideration in exchange for the conveyance is very small.  <u>See, e.g.</u>, <u>Rogers v. Pitchford</u>, 184 S.E. 623 (Ga. 1936) (holding that a grant given in consideration for $1 implied that only an easement was conveyed).  Moreover, the focus of the 1872 deed on the <u>purpose</u> of the transfer, for the operation of a rail line only, also favors the finding of an easement interest.  <u>See, e.g.</u>, <u>Fitchburg R. Co. v. Frost</u>, 16 N.E. 773 (Mass. 1888) (holding that a deed conveying a strip of land for railroad purposes only granted the railroad an easement).

briefs fail to constitute a trespass claim against the defendants.[10]
The Court, therefore, has no need to address the issue of whether
or not LaTex has a roadway easement to cross the tract of land.
The plaintiffs' trespass claim against the defendants will be
dismissed with prejudice.

## IV.  Contract

The Asset Purchase Agreement entered into by GSO and Fibre
Corporation on November 4, 2002, states that the "asset purchase
shall be cash in the sum of Six-hundred and Eighty Thousand Dollars
($680,000.00), payable at the time of closing."  Asset Purchase
Agreement (attached as Ex. D to Def. Motion for Partial Summ.
Judgment).  Furthermore, closing was to "take place within 15 days
after [Fibre Corporation] ha[d] completed its due diligence and
submitted a letter of satisfaction to GSO so stating."  Id.  Fibre
Corporation had thirty (30) days from the date of execution of the
agreement to complete its due diligence.  Id.  Therefore, closing
for the sale, as contemplated by the written agreement, should have
been completed on or before December 19, 2002.

Though the sale was not closed on December 19, 2002, the
plaintiffs contend that an enforceable contract persisted between
GSO and Fibre Corporation because the parties' subsequent words and

---

[10] As the plaintiffs' briefs focus exclusively on the argument
that they own the tract in fee simple, the Court is presented with
no alternative argument that the defendants are interfering, in any
way, with the right of way that was conveyed under the 1872 deed.

conduct evinced an intent to keep the contract to purchase the mulch processing plant in effect. Fibre Corporation alleges that, during discussions after the closing date passed, GSO never gave an "ultimatum" to the defendants concerning the contract and even agreed to accept $400,000.00 in cash with the balance of the purchase price to be secured by a second mortgage or deed on the property instead of receiving the full purchase price of the facility at closing.

The Court is presented with a number of documents memorializing the post-closing-date conversations between GSO and Fibre Corporation. On February 4, 2003, Larry Liebert, GSO's agent, sent a facsimile marked "urgent" to Donald Cox which states:

> Dear Don,
>
> I must confess that I am extremely disappointed in our inability to be able to close the transaction for the sale of our plant per our written agreements and numerous discussions confirming your interest in buying the plant. However I now find myself in the situation where we have addressed every item and provided solutions for every item that has arisen from your due diligence and our work and so I am at a total loss to explain why we have not been able to close. In fact, I have also included in this fax the name of two attorneys in Natchez who would be more than willing to represent you in closing this transaction and stand ready for your call to complete same. I have placed my company in a position of peril as a result of the delaying of this closing and must proceed as soon as possible, hopefully by the end of this week, to complete this transaction so we can manufacture product and supply to our customer base. If you have any questions concerning any other items that we have not already addressed please let myself or Robin Punches know immediately so that we can respond to those items. Otherwise I look forward to a closing by the end of this week. . . . I certainly look forward to your response

> and, more importantly, to completing this transaction so
> that we can initiate the partnership we have discussed
> for all of these months.
>
> Very truly yours,
> /s Larry L. Liebert

Def. Rebuttal Brief in Support of Motion for Partial Summ.

Judgment, at 9.

Following the February 4 communication with Donald Cox, a

number of conversations by facsimile occurred between GSO's Larry

Liebert and Robin Punches, a Mississippi attorney retained by GSO

to facilitate the transaction.  The first such facsimile, dated

February 7, 2003, states:

> Dear Robin,
>
> I received a message from Donald Cox [Fibre Corporation's
> representative] yesterday indicating he had a verbal
> commitment from the bank, and expected to receive written
> confirmation today.  The terms are $400,000 in cash and
> the balance on a second mortgage on the property.  He
> must negotiate the terms and conditions of the second
> mortgage.
>
> I will let you know of further information I receive from
> Mr. Cox.  Please do not hesitate to contact me if you
> have any questions or need any additional information.
>
> Very truly yours,
> /s Larry L. Liebert

Facsimile date February 7, 2003 (attached as Ex. D-1 to Pl. Motion

for Partial Summ. Judgment).  A second facsimile sent three days

later from Larry Liebert details further discussions between the

parties:

> Dear Robin,

-24-

I talked with Donald Cox this weekend.  The current deal
he put together is $300K in cash, the balance in notes.
I would like you to put some pressure on him to find
another $100K.  I am willing to accept a second if he has
$400K in cash, but will want the first mortgage if I am
carrying the majority of the liability, which I will if
he only has $300K.  Also please begin discussing paydown
schedule, etc.  Apparently this is a private lender Mr.
Cox found.  Is there any headway with the bank contacts
you discussed, maybe this is another option for Mr. Cox.

I will call you a little later this morning to discuss.

Very truly yours,
/s Larry L. Liebert

Facsimile date February 10, 2003 (attached as Ex. D-2 to Pl. Motion

for Partial Summ. Judgment).  Another facsimile was sent to Robin

Punches the following day:

Dear Robin,

I wanted to bring you up to date on a few things.  Donald
Cox has scheduled appointments with two of the local
banks in Natchez to make presentations to them.  If we
deal with an institution as opposed to an individual, I
am willing to take a second to the bank.

Don is also concerned about the appraisal value of the
property, and is ordering a new appraisal.  I wanted to
make sure we keep on top of this.  In the meantime, we
are locating and will send to you a copy of the most
recent appraisal we have of the property.

Please do not hesitate to contact me if you have any
questions.

Very truly yours,
/s Larry L. Liebert

Facsimile dated February 11, 2003 (attached as Ex. D-3 to Pl.

Motion for Partial Summ. Judgment).

Further discussions continued between the parties from

February to August.  See Depo. of Donald Cox, at 111 (attached as Ex. E to Pl. Motion for Partial Summ. Judgment) (asserting that Liebert informed Cox on May 20, 2003, that GSO was not dealing with another party and the deal was "back on track").  On July 21, 2003, Donald Cox faxed what he coined as "suggested proposal content" to Larry Liebert detailing what the new written agreement for the purchase of the plant was to be.  All of the terms of the suggested agreement were essentially the same as before, except that the closing date was changed and Fibre Corporation was to pay $300,000.00 at closing, and deliver a note in the amount of $400,000.00 payable in four years, plus an eight percent interest rate per annum.[11]  See Facsimile dated July 21, 2003 (attached as Ex. D-7 to Pl. Motion for Partial Summ. Judgment).  However, this new agreement was never signed by a GSO representative, and the plaintiffs were informed the next month that the plant had been sold to LaTex.

The plaintiffs contend that the above-mentioned discussions, which occurred after the closing date passed, put this case factually "on point" with Canizaro v. Mobile Communications Corporation of America, 655 So. 2d 25 (Miss. 1995).  In Canizaro, the parties executed a written agreement whereby the defendant

---

[11]  The total purchase price for the plant was raised to $700,000 as opposed to the original $680,000 because Fibre Corporation wanted GSO to set up another production line in the plant for $20,000.

agreed to be the principle tenant and lease office space in a
building being developed by the plaintiff.  Id. at 26.  The
agreement contemplated that the defendant would not be obligated to
"close" the lease until the plaintiff had obtained the necessary
financing for the construction of the building.[12]   Id.

_____

[12]   The agreement stated in part:

8. *Closing Date*
The closing ("Closing") of the transaction contemplated
herein shall occur . . . at the earlier of 120 days from
the date hereof or within ten (1) days following the date
[the defendant] issues its final written approval to the
transaction contemplated by this Agreement (the "Closing
Date").   The closing date may be extended for an
additional 60 days if construction financing shall not
have been committed, and the [plaintiff's] Interests are
diligently pursuing the availability of such financing.
. . .
10. *Default*
. . .
Without limitation of the foregoing and notwithstanding
any other provisions in this Agreement, [the defendant]
acknowledges that [the plaintiff] has, in this Agreement
undertaken certain obligations and have [sic] made
certain covenants and representations which he may be
unable to keep and perform by the Closing Date after
asserting their best efforts to do so in good faith.  In
such even, absent the occurrence of an Event of Default,
and if the Event of Default has not been waived by [the
defendant], then either party may terminate this
Agreement by written notice to the other.  Upon any such
termination, this Agreement shall become null and void
and of no further force or effect, and the parties shall
be relieved of their respective obligations and
liabilities hereunder.
. . .
12.9 If full performance of this Agreement is not
completed by the Closing Date and is not otherwise
excused, either party shall have the right after that
date to declare time to be of the essence of this
Agreement by giving written notice to the other party.
Such notice shall contain a declaration that time is of

-27-

Additionally, the agreement prohibited any modifications to the contract unless such changes were agreed to in writing.  <u>Id.</u>

After the first closing date passed, the parties in <u>Canizaro</u> agreed, in writing, to extend the closing date to another date. <u>Id.</u> at 27.  That date also came and went, but the parties continued "working towards trying to make the project a reality."  Such efforts from the defendant included retaining the services of an architect and designer, contributing to construction conferences, suggesting changes in the plaintiff's development plan, pursuing other tenants for the building, and even attending a public ground-breaking ceremony at the building site.  <u>Canizaro</u>, 655 So. 2d at 27.  However, the defendant refused to close on the deal a little over a month later when it was presented with a financing commitment by the plaintiff.[13]  <u>Id.</u>

The plaintiff brought suit against the defendant company for breach of contract, and the trial court granted summary judgment in the defendant's favor, holding that the facts presented by the

---

the essence and shall fix the time, date and place of final settlement, which date may not be sooner than fifteen (15) days nor later than thirty (30) days following the effective date of giving such notice. <u>Id.</u>

[13] The defendant company had begun merger negotiations with BellSouth after the groundbreaking ceremony occurred.  Apparently, these negotiations provided the impetus for the defendant's change of attitude on its agreement with the plaintiff, as BellSouth indicated during those meetings that the leasing arrangement was not something that should be pursued further.  <u>Id.</u> at 28.

plaintiff were insufficient to show that the contract had not expired once the written agreed-upon closing date had passed.  Id. at 28.  On appeal, that holding was reversed, however, as the Mississippi Supreme Court found there was ample evidentiary support to generate a genuine issue of material fact on the issue of whether the defendant had waived its right to strictly enforce the written closing date.  Id. at 29.  The defendant had given every indication that it wished to proceed with the original arrangement by actively conducting business with the plaintiff "just as if the deadline had not passed."[14]  Moreover, the defendant's argument that the Statute of Frauds shielded it from liability because the closing date had not been extended further in writing was similarly discounted as being potentially waived.[15]

---

[14] Canizaro, 655 So. 2d at 29; see also Gannaway v. Toler, 84 So. 129 (1920) (holding that a seller waived his right to claim that the defendants failed to comply with an agreement after he accepted partial payment and failed to complain about the insufficiency for three months).

[15] Pursuant to Miss. Code Ann. § 15-3-1 (c), "[a]n action shall not be brought whereby to charge a defendant . . . upon any contract for the sale of lands, tenements, or hereditaments . . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged . . . ."  The court found that the defendants were not entitled to judgment as a matter of law under this defense:

> The [defendants] also contend that as the underlying contract between the parties was within the Statute of Frauds, any modification or waiver of said contract would also have to be in writing.  See Miss. Code Ann. § 15-3-1(c) (1972).  With respect to a modification,

A review of Canizaro demonstrates that, contrary to the plaintiffs' contentions, the facts of the present case are not "on point" with the plaintiffs' cited case.  As an initial matter, the written contract involved in this case, as opposed to the one involved in Canizaro, did not contemplate that the parties would be unable to "close" on the deal at the specified time in the agreement.  This fact, however, only marginally distinguishes this case from Canizaro because unless it is expressly stated, strict adherence with a contract's closing date is not normally required.  See Ferrara v. Walters, –– So. 2d ––––, 2005 WL 2298248, at *7 (Miss. 2005) ("Unless a contract expressly states so, or unless

---

they are correct.  However, the instant case concerns a purported *waiver*.  See generally E. Allan Farnsworth, Contracts § 8.5 (1982) (discussing distinction between modification and waiver).  Although we have not addressed this exact question previously, there seems no doubt that a party may waive the protection of the Statute of Frauds. . . .  Silence or failure to demand strict performance may be construed as a waiver, particularly where the opposing party is under the reasonable impression that timely performance will not be insisted upon . . . Once a waiver has been made, the waiving party can reinstate the essentiality of time only by notifying the other party of his intention to do so and stating a reasonable time for the latter to come into compliance. . . . Consequently, we find that the Statute of Frauds does not operate to prevent a party from unilaterally waiving his rights under a contract.

Canizaro, 655 So. 2d at 30 (emphasis in original).

there is otherwise shown to be a clear indication of intent, time is not ordinarily considered to be of the essence in the performance of a contract.") (citing <u>Gault v. Branton</u>, 75 So. 2d 439, 455 (Miss. 1954)).   Thus, in spite of the defendants' position, GSO's contractual obligations perhaps did not expire immediately upon the passing of the closing date.   The continued communications between GSO and Fibre Corporation, especially as evidenced by the February 4th communication from Liebert to Cox,[16] foreclose a finding, as a matter of law, that the contract expired immediately upon the failure of Fibre Corporation to close on the specified date.   The absence of a clause specifically contemplating non-compliance with the closing date does, however, distinguish this case from <u>Canizaro</u> inasmuch as the plaintiffs cannot show that during the negotiations <u>preceding the execution of the instrument</u> the defendants knew of and accepted a substantial possibility of the closing not occurring on the date specified.

Another fact distinguishing the present case from <u>Canizaro</u> is that the defendant in <u>Canizaro</u> had clearly treated the contract "as

---

[16] Clearly, the parties can mutually assent to a later closing date.  <u>See, e.g.</u>, <u>Byers Transp. Co. v. Fourth Nat. Bank & Trust</u>, 333 F.2d 822, 825 (10th Cir. 1964) (holding that parties, through clear agreement, had extended closing date beyond that contemplated in the original contract); <u>Johnson v. Exclusive Properties Unlimited</u>, 720 A.2d 568, 570 (Me. 1998) ("Both parties considered the contract to remain in force during the negotiations, which continued after the closing date.").   Here, there is a genuine question of fact as to whether GSO actually agreed, through words or conduct, to extend the closing date.

if the deadline had not passed." The defendant, among other things, had continually assured the builder that it intended to go through with the contract, participated in development plans, and even attended a public ground–breaking ceremony in anticipation that in the near future the contract would be fulfilled essentially as written. The facts presented by this case, however, are not as compelling, inasmuch as the only evidence presented by the plaintiffs as to GSO's intent concerning the continued viability of the original contract revolve around the <u>ongoing discussions</u> between the parties regarding financing for the purchase of the plant. As a general principle, simply discussing a possible contract with a party does not create an enforceable agreement. <u>See</u> Am. Jur. Contracts § 37 ("No contract is made by letters, telegrams, and the like, which the parties intend only as preliminary negotiations, if the wording, context, and sense of the letters reveal an intent to negotiate rather than an intent to form a binding contract."); Am. Jur. Sales § 521 ("[A]n offer to engage in further negotiations does not support the formation of an enforceable contract, and evidence of engaging in tentative negotiations does not constitute the making of an offer that will support the formation of a binding contract.").

Furthermore, in <u>Canizaro</u> the only variance between the agreement, as written, and the perceived continuation of the agreement after the closing date had passed involved the time of

closing.  The price and all other essential terms of the contract remained the same.  In this case, the plaintiffs claim that not only had GSO waived its right to enforce the closing date as written, but they also maintain that the financing arrangement between the parties had been altered through subsequent discussions.  There is a vast difference between accepting $680,000.00 in cash a few months past the original closing date and accepting $400,000.00 in cash and personally financing the remainder at a time well beyond the closing date stated in the agreement.

Moreover, the plaintiffs have never shown what the particulars of the agreement actually were going to be.  Was Fibre Corporation going to pay $400,000.00 down or $300,000.00?  Was GSO, in fact, willing to finance the remainder of the balance?  If so, was its security interest going to be secondary to that of the primary lender's?  What was the repayment period going to be?  The facsimiles between Liebert and Punches, which are tentative in tone,[17] give some <u>indication</u> as to what the answers to those

_____

[17] For instance, the February 7 facsimile from Liebert to Punches states that Cox wanted to finance $280,000 of the purchase price of the plant through a second mortgage on the property, but that Cox still had to "negotiate the terms and conditions of [that] mortgage."  The February 10 facsimile indicates that GSO was unhappy with Fibre Corporation's most recent proposal because it now wanted to finance $380,000 of the purchase price through GSO.  Furthermore, Liebert directed Punches to "begin discussing [a] paydown schedule[,]" indicating that a concrete agreement had not yet been reached.  The following February 11 facsimile also shows that the details of the agreement had yet to be solidified inasmuch

questions might have been, but they do not demonstrate any
particulars about a final agreement.  Without the essential terms
of the agreement in place, the plaintiffs do not convince this
Court that the contract terms were extended or modified.  See Beck
v. Goodwin, 456 So. 2d 758, 760 (Miss. 1984) (stating that an
"offer must be so definite in its terms, or require such definite
terms in the acceptance, that the promises and performances to be
rendered by each party are reasonably certain") (quoting
Restatement (First) of Contracts § 32 (1932)); Am. Jur. Contracts
§ 37 ("If the parties have not agreed to all of the essential
terms, but have merely engaged in preliminary negotiations, there
is no contract.").

Moreover, the plaintiffs have failed to provide evidence that
GSO actually agreed to any change in financing.  The proffered
discussions between Liebert and Punches show that GSO was
considering an alternative to receiving $680,000.00 in cash, but
there is no evidence that an actual agreement was reached.  GSO
declined to execute the new written agreement sent to it by Fibre
Corporation in July, 2003, and the plaintiffs have failed to
provide sufficient proof that GSO verbally agreed to the financing
arrangement.  See Edwards v. Wurster Oil Co., 688 So. 2d 772, 775
(Miss. 1997) (stating that while a party can accept an agreement

---

as GSO had not yet determined whether it was willing to take a lien
inferior to that of the primary lender.

through its actions, such conduct must be "definite and unequivocal" to bind it to the contract).

As to the Statute of Frauds, the <u>Canizaro</u> holding was premised, in large part, upon the theory that the defendant's conduct had caused it to <u>waive</u> any right to strictly enforce the closing date in the written agreement or to require a new writing reflecting the obviously consented-to change in that date. <u>Canizaro</u>, however, also recognizes that true modifications to contracts for the sale or lease of land have to be in writing.

As already discussed, the financing arrangement for the sale was clearly a modification of the original terms of the contract. Whereas the exact time for closing may not be considered an essential term of the contract and, therefore, is subject to possible waiver, a change in a term such as the price and financing arrangements is a substantial modification of the parties' original contractual expectations.   In these circumstances, the Court declines to apply the waiver doctrine from <u>Canizaro</u>.  Therefore, the absence of a written amendment to the financing term of the contract signed by GSO forecloses the formation or continuation of an enforceable contract under the Statute of Frauds.  This holding is also in keeping with one of the purposes of the Statute of Frauds – to force contracting parties for the sale of land to reduce their agreement into writing to "avoid dependence on the imperfect memory of the contracting parties[.]"   <u>Allred v.</u>

-35-

<u>Fairchild</u>, 785 So. 2d 1064, 1070 (Miss. 2001).

**V.  Defendants' Motion to Dismiss Plaintiffs' Motion for Partial Summary Judgment**

The defendants move this Court to dismiss the plaintiffs' Motion for Partial Summary Judgment on the basis that it is untimely filed.  Because the defendants are entitled to summary judgment on both the trespass and breach of contract claims and the Court has effectively denied the plaintiffs' cross-motion for summary judgment, the defendants' Motion to Dismiss is denied as moot.

**CONCLUSION**

The defendants are entitled to summary judgment on the plaintiffs' trespass claim and their breach of contract claim for the aforementioned reasons.  The Court declines to address any of the remaining claims as neither party has adequately briefed the issue of the viability of those claims at this stage of the litigation; however, in light of this Memorandum Opinion and Order, the parties will be required to address the issue of the proper disposition of the remaining claims.  Accordingly,

IT IS HEREBY ORDERED that the defendants' Motion for Partial Summary Judgement [**docket entry no.61**] is **GRANTED** as to the plaintiffs' breach of contract claim (count one of the complaint) and also as to the plaintiffs' trespass claim (count nine of the

complaint), but is **DENIED** as to all other claims;

IT IS FURTHER ORDERED that the plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 65**] is **DENIED**;

IT IS FURTHER ORDERED that the plaintiffs' claim of breach of contract (count one of the complaint) and the plaintiffs' claim of trespass (count nine of the complaint) are **DISMISSED WITH PREJUDICE**;

IT IS FURTHER ORDERED that, in light of the dismissal of the plaintiffs' breach of contract and trespass claims, the defendants shall submit a memorandum addressing the viability of the remaining claims in this action within thirty (30) days of entry of this Order;

IT IS FURTHER ORDERED that any rebuttal memorandum shall be due within ten (10) days of the service of the defendants' response;

IT IS FURTHER ORDERED that the defendants' Motion to Dismiss the Plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 67**] is **DENIED** as **MOOT**;

SO ORDERED, this the 8th day of December, 2005.


                                        S/DAVID BRAMLETTE
                                        UNITED STATES DISTRICT JUDGE


                                    –37–