IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FIBRE CORPORATION, TRIMEN WOOD
PRODUCTS, LLC, DONALD COX, &
ORVAL GRAY                                          PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 5:04cv170-DCB-JMR

GSO AMERICA, INC., GSO HOLDING,
LLC, GSO MISSISSIPPI, LLC, LaTex
ORGANIC, LLC, & HOPE AGRI
PRODUCTS, INC.                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the defendants' Motion
for Summary Judgment on Remaining Issues [**docket entry no. 90**].
Having reviewed the motion, briefs, applicable statutory and case
law and being otherwise fully advised as to the premises, the Court
finds as follows:

## FACTS AND PROCEDURAL HISTORY

The facts of this case, which are primarily based around a
breach of contract action involving a failed purchase of a mulch
processing plant, are presented in the Court's previous order dated
December 8, 2005 [docket entry no. 89].  The Court will, however,
re-identify who the individual defendants are to this action.[1]  As
of November 4, 2002, GSO America, Inc. and its related companies
(collectively, the "GSO defendants") owned the cypress processing
facility at issue in this case.  Hope Agri Products, through its

---

[1] The plaintiffs may generally be referred to collectively.
Where it is necessary to distinguish between them, the Court will
do so.

subsidiary company, LaTex Organic (collectively, "Hope Agri"), eventually purchased the facility from the GSO defendants.

In the previously mentioned order, the defendants were granted summary judgment on two of the nine counts alleged against them by the plaintiffs.[2]  Subsequent to the dismissal of the breach of contract and trespass claims, the Court directed the parties to brief the viability of the remaining claims in this suit in light of the fact that no contract for the sale of the facility was breached between the parties.  The remaining counts include: (1) breach of good faith and fair dealing; (2) breach of fiduciary duty; (3) tortious interference with contract; (4) tortious interference with prospective business relationship or contract; (5) civil conspiracy; (6) negligent misrepresentation; (7) promissory estoppel/detrimental reliance.  The defendants responded with the present Motion, and the issues have been fully briefed.

**DISCUSSION**

**I.  Summary Judgment Standard**

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>Fed. R. Civ. P.</u> 56(c).  The moving party has the initial burden of identifying relevant portions of the record,

---

[2] Summary judgment was granted to the defendants on Count One (Breach of Contract) and Count Nine (Trespass).

including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A contested fact is "material" when it has the potential to change the outcome of the case. <u>Ginsburg 1985 Real Estate P'ship v. Cadle Co.</u>, 39 F.3d 528, 531 (5th Cir. 1994) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." <u>Id</u>.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. <u>Conkling v. Turner</u>, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1449 (5th Cir. 1993). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." <u>Id</u>. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an

-3-

element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law.  When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment.  Anderson, 477 U.S. at 255.  The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence,  . . . since it is the province of the jury to assess the probative value of the evidence."  Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).  By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party.  Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  Count Two: Breach of Duty of Good Faith and Fair Dealing

In Count Two of their complaint, the plaintiffs allege that "GSO America, Inc.'s failure to notify Fibre Corporation of any intent to cancel the . . . contract prior to its sale of the

cypress processing facility to LaTex Organic . . . constitutes a breach of GSO America, Inc.'s duty of good faith and fair dealing." Compl., ¶16.   The defendants contend that this claim must fail because no such duty exists in light of the fact that there was no enforceable purchase contract between the parties.

"The duty of good faith and fair dealing applies to the performance and enforcement <u>of a contract</u>." <u>Robinson v. Southern Farm Bureau Cas. Co.</u>, 915 So. 2d 516 (Miss. Ct. App. 2005) (emphasis added). <u>See also</u> <u>Baker Donelson Bearman & Caldwell P.C. v. Muirhead</u>, --- So. 2d ----, 2006 WL 177593, at *9 (Miss. Jan. 26, 2006) ("The duty of good faith and fair dealing attends <u>all contracts</u> interpreted under Mississippi law.") (emphasis added). Thus, the existence of an enforceable contract is a *sine qua non* of a breach of duty of good faith and fair dealing claim.   Count Two of the plaintiffs' complaint must, therefore, be dismissed.

**III.   Count Three: Breach of Fiduciary Duty**

In Count Three of their complaint, the plaintiffs allege that they and Hope Agri were joint venturers/partners in the potential "purchase and operation of the Adams County cypress processing facility."   It is further alleged by the plaintiffs that Hope Agri unlawfully used confidential information garnered from this joint venture to harm the plaintiffs.   The plaintiffs contend that this misuse of confidential information and the failure of Hope Agri to disclose its intent to use the Adams County facility for its own

-5-

business purposes constitutes an actionable breach of fiduciary
duty.

In order for the plaintiffs' breach of fiduciary duty claim to
be viable, they must first prove that some special relationship,
such as a joint venture, existed between the parties.  See Banks v.
Southern Farm Bureau Cas. Co., 912 So. 2d 1094, 1098 (Miss. Ct.
App. 2005) (holding that there is no fiduciary relationship in a
normal arm's length transaction between an insurer and insured);
Burgess v. Bankplus, 830 So. 2d 1223, 1228 (Miss. 2002) (holding
that arm's length business transaction between debtor and creditor
does not give rise to a fiduciary duty); Rice v. Williams, 387 So.
2d 733, 735 (Miss. 1980) (recognizing a fiduciary relationship
between partners).  "A joint venture can be broadly defined as an
association of persons to carry out a single business enterprise
for profit for which purpose they combine their property, money,
efforts, skill and knowledge."[3]   Thus, there are two basic
requirements for the formation of a joint venture: (1) an agreement
between the parties form a single business enterprise for profit;
and (2) a combination of assets or knowledge to further that
enterprise.

_____

[3]   Roffman v. Wilson, 914 So. 2d 279 (Miss. Ct. App. 2005)
(citing Pittman v. Weber Energy Corp., 790 So. 2d 823, 826 (Miss.
2001).  A "joint venture" differs from a "partnership" only in that
the joint venture is generally related only to a single transaction
while partnerships refer to a general and ongoing business.  See
Pittman v. Weber Energy Co., 790 So. 2d 823, 827 (Miss. 2001).

As to the first requirement, a joint venture is a form of contract and may be established through oral or written, express or implied agreement among its members.  Hults v. Tillman, 480 So. 2d 1134, 1142-3 (Miss. 1985); Carmichael v. Agur Realty Co., Inc., 574 So. 2d 603, 610 (Miss. 1991).  "If the parties do not intend to become partners, ordinarily they cannot be considered as such." Fewell v. Am. Surety Co., 28 So. 755 (1902).  Such agreement also requires "a joint proprietary interest in the enterprise and right of mutual control" between the parties.  Hults, 480 So. 2d at 1142.

The plaintiffs in this case assert that Fibre Corporation's president, Donald Cox, made two separate trips to Hope Agri's facility in Arkansas to discuss a "joint venture" with that company regarding plans for Hope Agri to either aid them in purchasing the mulch processing plant or to purchase product from Fibre Corporation once it was able to acquire the plant on its own.  Cox testified that "Hope Agri's [p]resident[,] Ken Allen[,] went to great lengths to give him ideas that the Natchez facility needed an automated bagging machine and Cox took Allen some sample products in GSO bags."  Pl. Response to Def. Motion for Summ. Judgment on Remaining Issues, at 2 (citing Depo. of Donald Cox, at 150).  It is contended by the plaintiffs that these discussions give rise to the implication that an agreement was reached to form a joint venture between the parties.

While it is admitted by the defendants that there was a

discussion about "possible future sale of mulch," they contend that no agreement was ever met.  The discussions were allegedly memorialized by a facsimile sent to Hope Agri on December 5, 2002. See Facsimile dated Dec. 5, 2002 (attached as Ex. "B" to Pl. Response to Motion for Summ. Judgment on Remaining Issues).  It is clear from the content of this correspondence that no agreement had been reached as of that date for Hope Agri and Fibre Corporation to carry on a joint venture.  The facsimile simply memorializes a proposal offered by Fibre Corporation to Hope Agri.[4]  Thus, there is no evidence that Hope Agri ever agreed to enter into a joint venture to purchase the Adams County facility.  There was, therefore, no joint venture with regard to any business deal to aid Fibre Corporation in purchasing the plant.

The plaintiffs also appear to contend that there was a joint venture for Hope Agri and Fibre Corporation to enter into a business relationship where Hope Agri would purchase product from Fibre Corporation once the plaintiffs were able to obtain the facility on their own.  The plaintiffs note that in response to propounded interrogatories, Hope Agri admitted that it had intended

---

[4] For example, the correspondence asks for a "timely response" from Hope Agri.  If the letter was memorializing a prior agreement, it is unclear why a response would be required.  Moreover, the letter begins essentially with a "recap" of the conversations that Cox and Allen had in the prior visits and provides a list of reasons why Hope Agri should aid Fibre Corporation in purchasing the facility.  In short, it is apparent that the letter simply memorialized a sales proposal and not a previously reached agreement.

to purchase product from Fibre Corporation.   See Hope Agri's
Interrogatory Responses, at 4-5 (attached as Ex. "C" to Pl.
Response to Motion for Summ. Judgment on Remaining Issues).   The
plaintiffs claim that this case presents similar facts as those
contained in Carmichael, an opinion in which the Mississippi
Supreme Court found that sufficient evidence existed to hold that
a joint venture had been formed between two hopeful hoteliers,
Craven and Carmichael.  The plaintiffs assert that in that case the
"only evidence presented which showed that a joint venture
agreement existed was that the parties discussed purchasing a
facility if financially feasible, that the parties went to the
coast to view [a hotel for sale], and that Craven, but not
Carmichael, met with [a real estate agent] and represented that
Craven and Carmichael were partners in purchasing the hotel."  Pl.
Response to Motion for Summ. Judgment on Remaining Issues, at 3
(citing Carmichael, 574 So. 2d at 610).

     The plaintiffs neglect to mention that Carmichael, the party
challenging the joint venture relation, had also signed a real
estate commission agreement with Craven for the potential purchase
of the hotel property, a fact which surely bolstered the
plaintiff's claim that a joint venture had been formed.
Carmichael, 574 So. 2d at 606-07.  In any case, it is clear that
Carmichael made numerous other affirmative acts indicating that a
joint venture had been formed (discussions, disclosing financial

statements, signing agreements, traveling to view the property, etc.).

In this case, the only act on behalf of Hope Agri identified by the plaintiffs as indicative of the existence of a joint venture regarding an agreement to buy Fibre Corporation product is that Hope Agri had discussions with Fibre Corporation about the possibility of purchasing mulch in the future. There has been no evidence presented concerning conversations about profit-sharing or control over the alleged joint venture, much less that Hope Agri ever actually agreed to any such proposals even if they were discussed. The limited discussions involving potential purchases in the future do not give rise to even an implied agreement to form a joint venture. If they did, then any business which expressed interest in a manufacturer's products would necessarily also have formed a joint venture/partnership with the manufacturer. Such a result is untenable.

Thus, without evidence of a definite agreement, either express or implied, to either start an enterprise to purchase the mulch processing plant or to partner in a plan to sell and purchase product from that plant, the plaintiffs cannot establish that there was a joint venture between Hope Agri and Fibre Corporation. Without such a relationship, the breach of fiduciary duty claim must be dismissed.

-10-

## IV.   Count Four: Tortious Interference with Contract

The plaintiffs allege in Count Four of their complaint that the defendants "had knowledge of the valid and enforceable contract between GSO America, Inc. and Fibre Corporation" and that Hope Agri "intentionally, and without justifiable cause" interfered with that contract by persuading GSO America to breach its agreement with Fibre Corporation.  The Court has previously ruled that there was no valid and enforceable contract between GSO America and Fibre Corporation for the purchase of the mulch processing facility; therefore, Count Four of the complaint should be dismissed.

## V.   Count Five: Tortious Interference with Prospective Business Relationship or Contract

The plaintiffs allege that Hope Agri, with knowledge of a prospective agreement between GSO America and Fibre Corporation for the sale and purchase of the mulch processing facility, engaged in activity for the purpose of preventing Fibre Corporation from entering into a contract with GSO America.  Thus, this claim does not lie against the selling entity, the GSO defendants, but rather only against Hope Agri and LaTex Organic, as the defendants who allegedly "interfered" with the business relationship.[5]

---

[5] "A party to a contract cannot be liable for tortious interference with a contract.  Only a party independent of the contract can cause another to breach a contract." Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 910 So. 2d 1093, 1098 n.3 (Miss. 2005).  See also Cenac v. Murry, 609 So. 2d 1257, 1269 (Miss. 1992) ("[A] party to a contract cannot be charged with interfering with his own contract").

Under Mississippi law, a claim for tortious interference with a prospective contract or business advantage requires a showing of the following four elements:[6]

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

Nichols v. Tri-State Brick & Tile Co., 608 So. 2d 324, 328 (Miss. 1992). Additionally, the plaintiff must also prove that the contract would have been performed but for the alleged interference. Hubbard v. Chevrolet Co. v. General Motors Corp., 682 F. Supp. 873, 877 (S.D. Miss. 1987).

The defendants contend that the plaintiffs' tortious interference with prospective contract claim must fail because the second element, that the defendants' acts were "calculated to cause damage," has not been met in this case. The defendants assert that there is "not a shred of evidence . . . to indicate that Hope Agri had any ill will toward plaintiffs; had any intention, wish or desire to injure plaintiffs; or that Hope Agri had a purpose of causing damage or loss to the plaintiffs."

---

[6] These same elements are also necessary to establish a cause of action for intentional interference with an established contract; therefore, case law interpreting such actions offer some guidance in interpreting the present claim of interference with a prospective contract. See, e.g., Scruggs, 910 So. 2d at 1098.

-12-

While a showing of malicious intent is required by Mississippi courts to sustain an interference claim, "[m]aliciousness does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification." DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 684 (5th Cir. 2003) (quoting Cranford v. Shelton, 378 So. 2d 652, 655 (Miss. 1980)).  For instance, in DIJO, Inc., the Fifth Circuit upheld a district court's reasoning that "recklessness" or "cold indifference" to a party's contractual expectations was sufficient to sustain the plaintiff's interference claim.  351 F.3d at 684.

Thus, the defendants' argument that Hope Agri had no intent to actually harm the plaintiffs is insufficient to warrant summary judgment in favor of the defense.  The plaintiffs have alleged that Hope Agri intentionally interfered with Fibre Corporation's business relationship and potential contract with GSO America.  The defendants have not disputed that Hope Agri was aware of Fibre Corporation's intent to purchase the mulch processing facility and was also aware of its ongoing discussions with GSO America, and they have not offered any "legal or social justification" for Hope Agri's involvement in the matter.  See, e.g., Vestal v. Oden, 500 So. 2d 954, 957 (Miss. 1986) (stating that "there is no tortious interference when one has a justifiable interest and reason for acting"); Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So. 2d 812, 819 (Miss. 1996) (holding that bank's interest in "getting

-13-

paid on [a] note" was sufficient justification to defeat a tortious interference claim); Cockerham v. Kerr-McGee Chem. Corp., 23 F.3d 101 (5th Cir. 1994) (holding that defendant's interest in profits and a potential contractual relationship was a justifiable interest).

The defendants argue in the alternative that summary judgment is proper on this count because the plaintiffs cannot show that they would have been able to purchase the property in the absence of the alleged interference. See Hubbard Chevrolet Co., 682 F. Supp. at 877 ("To establish [a tortious interference] claim, the plaintiff must establish that there was a reasonable probability that plaintiff would have entered into a contractual relationship"). The defendants note that the plaintiffs had failed to purchase the property on December 19, 2003, as contemplated by their original agreement with GSO America. They also point out that, thereafter, Fibre Corporation had continually failed to present acceptable terms to purchase the facility. However, there is no dispute that, up until shortly before Hope Agri purchased the property, GSO America had been actively discussing the continued possibility of closing the deal with Fibre Corporation. The plaintiffs also maintain that they were ready and able to purchase the facility in May 2003, but GSO America's president, Larry Liebert, indicated that he would like to close in mid-July instead. There is, therefore, a genuine issue of material fact as to whether

there was a "reasonable possibility" that the purchase agreement would have been consummated in the absence of Hope Agri's alleged interference.

Lastly, the defendants also claim that the tortious interference claim must fail because the plaintiffs "cannot adduce evidence admissible in a Mississippi court of law to support actual damage from the alleged failure to purchase the Natchez facility." Def. Memo. in Support of Motion for Summ. Judgment on Remaining Issues, at 7.  See Cenac v. Murry, 609 So.2d 1257, 1274 (Miss. 1992) (holding that the "measure of recovery cannot be based on pure conjecture or speculation").  As with the previous claim, the Court finds that the issue of causation and the amount of damages, if any, should properly be presented to a jury on this issue.  See Nichols, 608 So. 2d at 329 ("[T]he question of the causation and quantum of damages in relation to tortious conduct is a jury issue seldom amenable to summary disposition").

## VI.  Count Six: Civil Conspiracy

To sustain a civil conspiracy claim in Mississippi, the plaintiffs must show: (1) the existence of an agreement between two or more parties to commit an illegal act, or to achieve some lawful purpose by an illegal means; (2) an overt act in furtherance of the conspiracy; and (3) damages arising therefrom. Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999); Wells v. Shelter General Ins. Co., 217 F. Supp. 2d 744, 753 (S.D. Miss. 2002).

-15-

In Count Six of their complaint, the plaintiffs allege that "Hope Agri Products, obtained confidential information regarding the agreement between GSO America, Inc. and Fibre Corporation . . . [and] disclosed the confidential information to LaTex Organic, LLC . . . ."  It is contended by the plaintiffs that the "two companies came to an agreement to defeat the [sale] of the Adams County facility to Fibre Corporation so that the facility could be purchased for themselves."  The defendants claim that the plaintiffs' conspiracy claim must fail because they cannot prove that any of the defendants ever committed an illegal act or agreed to commit an illegal act.

In response, the plaintiffs offer argument that there is "sufficient proof of a conspiracy between the Hope Agri/LaTex Organic and GSO defendants in this case to allow this claim to be decided at trial[, and r]easonable minds could differ as to whether some type of unlawful activity occurred between Hope Agri and GSO." Pl. Response to Def. Motion for Summ. Judgment on Remaining Issues, at 10-11 (emphasis added).  This response is somewhat puzzling inasmuch as the plaintiffs allege in the complaint that Hope Agri and LaTex Organic had formed the agreement for unlawful activity, not Hope Agri and the GSO defendants.  Upon examination of both theories of civil conspiracy, however, it is clear that neither may be sustained by the plaintiffs in this case.

A.   Conspiracy between Hope Agri and the GSO Defendants

-16-

The plaintiffs present evidence that Hope Agri and the GSO defendants had some contact during the time that ongoing discussions were taking place between Fibre Corporation and GSO America for the sale of the mulch processing plant. Thus, it appears that the plaintiffs believe that Hope Agri and the GSO defendants reached an agreement to interfere with the plaintiffs' potential contract or business relation (discussed *supra*). However, as mentioned above, a party cannot be held liable for interfering with his or her own contract. Moreover, the GSO defendants would have had no reason to conspire with Hope Agri to defeat the plaintiffs' potential business relationship inasmuch as GSO was free, at any time, to walk away from the business deal on its own accord.

B.  Conspiracy between Hope Agri and LaTex

As originally pled in their complaint, the plaintiffs state that Hope Agri and LaTex conspired to defeat the sale of the mulch processing plant to Fibre Corporation. Thus, it appears that this claim also embraces the belief that an agreement was reached to interfere with potential contractual expectations of the plaintiffs. There is, however, no evidence in the record of any agreement between these two companies to so interfere. See Smith v. St. Regis Corp., 850 F. Supp. 1296, 1324 (S.D. Miss. 1994) ("In order to avoid summary judgment, the plaintiffs must offer evidence which supports a finding at trial that the defendants agreed to

-17-

commit an illegal act"). Therefore, Count Six of the plaintiffs' complaint will also be dismissed.

## VII. Count Seven: Negligent Misrepresentation

The plaintiffs' next allegation in their complaint is that the GSO defendants breached a duty they had to correct any misconceptions Fibre Corporation held when they failed to inform the plaintiffs that GSO was considering other offers and/or participating in negotiations for the sale of the mulch processing facility with Hope Agri.

"The elements necessary to support a claim of negligent misrepresentation are: (a) a misrepresentation or omission of a fact; (b) the representation or omission is material or significant; (c) a failure by the defendant to exercise reasonable care; (d) reliance on the misrepresentation or omission; and (e) damages caused directly and proximately by reasonable reliance on the representation or omission." Arnona v. Smith, 749 So. 2d 63 (Miss. 1999) (citing Stonecipher v. Kornhaus, 623 So.2d 955, 964 (Miss. 1993)).

The defendants claim that no negligent misrepresentation claim may lie because GSO America had no duty "not to market its property as it saw fit[.]" Def. Memo. in Support of Motion for Summ. Judgment on Remaining Issues, at 8. Such an argument, however, does not address the aforementioned elements of this claim. The defendants also claim that there is no evidence to support the

plaintiffs' claim that GSO's president was lying or mistaken when he stated that GSO was not entertaining other offers on the facility.  The plaintiffs have, however, introduced testimony[7] and business records[8] that indicate Hope Agri was actively pursuing the purchase of the plant prior to and during the time that GSO denied it was entertaining offers from other parties to Fibre Corporation.

The defendants state that the plaintiffs are essentially requesting that the Court find that a contract existed "between GSO and Fibre that obligated GSO, without a right of first refusal, option or extension the contract which expired December 19, 2002, to refrain from sale of its Natchez facility until such time as GSO accepted new purchase terms from Fibre[.]"  Def. Rebuttal to Pl. Response, at 5.  The negligent misrepresentation claim, however, does not seek to recover damages stemming from the GSO defendant's refusal to sell the property to Fibre Corporation; rather, it pertains only to those damages which were suffered as a result of

_____

[7] For instance, William Dickey, the former owner of an adjoining business property to the mulch processing plant, testifies in his affidavit that during May 2003, GSO's plant manager informed him that Hope Agri was purchasing the property.  <u>See</u> Affidavit of William Dickey (attached as Ex. "D" to Pl. Response to Def. Motion for Summ. Judgment on Remaining Issues, at 5).

[8] The plaintiffs assert that Hope Agri set up LaTex Organic as its Mississippi subsidiary in order to purchase the mulch processing facility.  Hope Agri's tax returns indicate that LaTex was formed in May of 2003.  Thus, there is some evidence that Hope Agri was actively seeking to purchase the plant in question during the time that GSO's president denied that he was entertaining any other offers.

the alleged <u>misrepresentation</u>.  Had there been no allegation that GSO's president was untruthful in representing that he intended to continue to try to sell the property solely to the plaintiffs, summary judgment would be appropriate on this claim.

The defendants would have the Court require an enforceable contract to exist before any claim for negligent misrepresentation could lie.  Negligent misrepresentation is a <u>tort-based</u> claim and does not require the presence of a contract.  <u>See</u> <u>Pritchett v. Merchants & Farmers Bank</u>, 1999 WL 33537089, at *1 (N.D. Miss. Sept. 8, 1999) (analyzing a negligent misrepresentation claim in a scenario where a bank allegedly wrongfully accused a person of uttering forged money orders).  Summary judgment on this count will, therefore, be denied.

## VIII.   Count Eight: Promissory Estoppel/Detrimental Reliance

In Count Eight, the plaintiffs assert a promissory estoppel claim on the basis that GSO America made a promise to sell the Adams County facility to Fibre Corporation, and, in an effort to close on the deal, that the plaintiffs incurred foreseeable expenses based upon that promise.  In their response to the motion, however, the plaintiffs alter their theory somewhat, and now contend that the promise serving as the basis for the claim is not the one made by GSO that it would sell the property to Fibre Corporation, but rather the statement made by Larry Liebert that GSO was not considering any offers from other potential purchasers.

-20-

"The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence." Crowe v. Fotiades, 80 So. 2d 478, 486 (Miss. 1955). The plaintiffs have sufficiently alleged and supported their contention that GSO's Larry Liebert made a representation to them which they relied upon to their detriment. As with the negligent misrepresentation claim,[9] the Court finds that the defendants have not shown a lack of a genuine issue as to the elements of the promissory estoppel claim.

## CONCLUSION

The defendants are entitled to summary judgment on the plaintiffs' breach of duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and civil conspiracy claims; however, summary judgment will be denied as to the tortious interference with prospective business relationship or

---

[9] There seems to be little difference between a promissory estoppel claim and a negligent misrepresentation claim inasmuch as both involve detrimental reliance on the representation. However, promissory estoppel may be distinguished in that the representation does not have to be false at the time it is made. Moreover, the estoppel claim also requires a specific *mens rea*, that the defendant intended the plaintiff to rely upon the representation made.

contract, negligent misrepresentation and promissory estoppel claims. Accordingly,

IT IS HEREBY ORDERED that the defendants' Motion for Summary Judgement on Remaining Issues [**docket entry no. 90**] is **GRANTED** as to the plaintiffs' breach of duty of good faith and fair dealing (Count 2), breach of fiduciary duty (Count 3), tortious interference with contract (Count 4) and civil conspiracy (Count 6) claims, but is **DENIED** as to all other claims;

IT IS FURTHER ORDERED that the plaintiffs' breach of duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and civil conspiracy claims are **DISMISSED WITH PREJUDICE;**

SO ORDERED, this the 28th day of February, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE